IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-HC-2064-D

| | |
|---|---|
| WILLIAM ROBERT GRAY, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ERIK A. HOOKS, ) | |
| ) | |
| Respondent. ) | |

On February 20, 2018, Magistrate Judge Numbers issued a Memorandum and Recommendation ("M&R") [D.E. 26] and recommended that the court deny respondent's motion to dismiss [D.E. 13]. Both parties objected to the M&R [D.E. 27, 28].

"The Federal Magistrates Act requires a district court to make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made." Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (emphasis, alteration, and quotation omitted); see 28 U.S.C. § 636(b). Absent a timely objection, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond, 416 F.3d at 315 (quotation omitted). Moreover, the court need not conduct a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); see Wells v. Shriners Hosp., 109 F.3d 198, 200–01 (4th Cir. 1997). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized,

as the statute directs the district court to review only those portions of the report or specified proposed findings or recommendations to which objection is made." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (quotation and emphasis omitted).

As for those portions of the M&R to which the parties made no objection, the court is satisfied that there is no clear error on the face of the record. As for the objections, the court overrules them.

# I.

## A.

On November 24, 1992, Gray (a dentist in Kinston, North Carolina) and his wife Roslyn Sage Gray were separated and engaged in highly contentious divorce proceedings. That evening, Roslyn Sage Gray returned their two children to Gray's residence following her visit with the children. Roslyn Sage Gray then went outside and entered her Jeep. See State v. Gray, 347 N.C. 143, 161–62, 491 S.E.2d 538, 543–44 (1997).

A witness testified that he was jogging near Gray's residence and heard screaming and yelling inside the Jeep. Roslyn Sage Gray exited the Jeep and ran up the driveway towards the residence. Gray exited the Jeep, chased Roslyn Sage Gray, and tackled her. The two struggled. The witness asked what was happening. Gray told the witness to leave. Roslyn Sage Gray said, "Mister, please don't leave. If you leave, he'll kill me." The jogger then heard a shot, and Gray ran behind the residence. Roslyn Sage Gray died from a gunshot wound to her head. Roslyn Sage Gray also suffered injuries from a stun-gun and had been beaten with the butt of a pistol. See id. at 162, 491 S.E.2d at 544.

The police responded and arrested Gray. Gray denied knowing anything about the shooting or Roslyn Sage Gray's injuries or death and claimed that he had been in the bathtub inside his residence. Gray was indicted for first-degree murder, and North Carolina sought the death penalty.

For nearly a year, Gray maintained that he had nothing to do with his wife's injuries or death.

On October 22, 1993, nine days before Gray's trial was to begin, Gray admitted to his lawyers that he shot Roslyn Sage Gray during a fight in the driveway. See Gray v. Branker, 529 F.3d 220, 226 (4th Cir. 2008). Gray claimed that he and Roslyn Sage Gray were fighting and that he saw Roslyn Sage Gray holding a gun. Gray claims that he pushed the gun away, and it went off and killed his wife. See id.

On November 1, 1993, Gray's trial began. At the end of the guilt phase, the jury convicted Gray of first-degree murder. Id. On December 14, 1993, the sentencing phase began. Id. At the end of the sentencing phase, the jury recommended a death sentence, and the court sentenced Gray to death. See id. at 227. The Supreme Court of North Carolina affirmed Gray's conviction and sentence. See Gray, 347 N.C. at 163–93, 491 S.E.2d at 544–61. The United States Supreme Court denied certiorari. See Gray v. North Carolina, 523 U.S. 1031 (1998).

Gray filed a motion for appropriate relief in state court. On December 1, 2000, the state trial court denied relief. See Gray, 529 F.3d at 227. The Supreme Court of North Carolina also denied relief. See id.

In May 2002, Gray filed a petition for a writ of habeas corpus in this court, and the case was assigned to the Honorable Terrence W. Boyle. On March 28, 2006, this court denied relief. See id. Gray appealed. On June 24, 2008, the United States Court of Appeals for the Fourth Circuit held that Gray received ineffective assistance of counsel during the sentencing phase due to counsel's failure to investigate and present evidence of Gray's mental impairment. See id. at 228–40. The Fourth Circuit otherwise affirmed this court's order rejecting Gray's other claims concerning his conviction and sentence. See id. at 228–42. The Fourth Circuit ordered this court to "grant the writ of habeas corpus unless the State of North Carolina affords Gray a new sentencing hearing within a reasonable

3

time." Id. at 242.

On August 7, 2008, this court entered an order releasing Gray from his death sentence and imposing a sentence of life imprisonment if North Carolina did not initiate a new sentencing proceeding within 180 days. See Gray v. Lee, 608 F. App'x 172, 173 (4th Cir. 2015) (per curiam) (unpublished). In 2013, Gray filed several pro se motions in this court, including what the Fourth Circuit construed "as a motion under 28 U.S.C. § 2241 asking for his release on various constitutional grounds." Id. On January 13, 2014, this court, mistakenly believing that Lenoir County Superior Court had resentenced Gray, denied Gray's motions as moot. See id. On February 10, 2014, Gray moved for reconsideration. On August 20, 2014, this court granted the motion for reconsideration, but denied relief on Gray's claim concerning his delayed resentencing proceedings. This court found that the delay was reasonable because Gray's state trial counsel had been negotiating with the state prosecutor and that plea bargaining concerning Gray's sentence was on-going. The district court requested updates from the parties every 30 days. On August 21, 2014, Gray filed a notice of appeal. On September 5, 2014, Gray requested reconsideration of this court's denial of relief. On October 28, 2014, this court denied Gray's motion for reconsideration, but continued to receive monthly status reports on the status of Gray's resentencing. On February 12, 2015, the Fourth Circuit appointed counsel to represent Gray concerning his appeal of the denial of his original pro se motions and his request for reconsideration.

On June 11, 2015, Gray was resentenced in Lenoir County Superior Court. Gray received a life sentence.

On July 31, 2015, the Fourth Circuit declined to issue a certificate of appealability concerning the delay in Gray's resentencing. Gray, 608 F. App'x at 173. In doing so, the Fourth Circuit noted that Gray not only sought to challenge the delay in his resentencing, but also to raise an actual innocence

4

claim under McQuiggin v. Perkins, 569 U.S. 383 (2013). The Fourth Circuit held that any actual innocence claim "goes to the validity of Gray's underlying conviction," but that "claim is improperly raised here because it was outside the scope of the court's decision on his § 2241 sentencing challenge, and therefore never before the district court." Gray, 608 F. App'x at 173. The Fourth Circuit also stated "that Gray has not moved for an order authorizing the district court to consider a second or successive habeas corpus application, and we do not today decide whether such authorization would be appropriate." Id.

On February 9, 2016, Gray filed with the Fourth Circuit a pro se 28 U.S.C. § 2244(b) "motion for authorization to file a second or successive § 2254 petition." In re Gray, 850 F.3d 139, 140 (4th Cir. 2017). Gray sought to challenge the new judgment of conviction. See id. at 141. On May 1, 2016, Gray filed with the Fourth Circuit the proposed section 2254 petition he desired to file in this court if the Fourth Circuit authorized him to do so. See In re Gray, No. 16-433, [D.E. 8-1].[1]

On February 28, 2017, the Fourth Circuit held that Gray's "motion for leave to file a second or successive § 2254 petition is denied as unnecessary," and directed "the district court to consider Gray's second-in-time § 2254 petition as the first challenge to the new judgment." In re Gray, 850 F.3d at 144. In so holding, the Fourth Circuit recognized that its order was authorizing Gray "after being resentenced to life in prison following a successful habeas petition," to "challenge his underlying, undisturbed conviction in a second-in-time habeas petition." Id. at 142.

On March 20, 2017, Gray filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 [D.E. 1], and the case was assigned to the undersigned. In his petition, Gray attacks his

---

[1] For filing dates, the court uses the prison-mailbox rule. See Houston v. Lack, 487 U.S. 266, 275–76 (1988); Lewis v. Richmond City Police Dep't, 947 F.2d 733, 735–36 (4th Cir. 1991) (per curiam).

5

conviction and alleges: (1) that new forensic evidence supports his innocence; and (2) race discrimination during jury selection in violation of Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny. See [D.E. 4] at 5–7. Gray also attached to his petition documents concerning proceedings in the North Carolina Parole Commission. See [D.E. 4-1].

On May 2, 2017, this court held that Gray's petition survived initial review. See [D.E. 8]. On June 26, 2017, respondent moved to dismiss Gray's petition as untimely [D.E. 13] and filed a memorandum in support [D.E. 15]. On July 17, 2017, Gray responded in opposition [D.E. 22]. On July 31, 2017, respondent filed a supplement to the motion to dismiss [D.E. 24]. On August 18, 2017, Gray responded [D.E. 25].

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") states that a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D); see Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005). Subsection (A) of section 2244(d)(1) requires the court to determine when Gray's judgment became final. See 28 U.S.C. § 2244(d)(1)(A).

"[W]hen a state court defendant has been granted a resentencing, the limitations period under

6

§ 2244(d)(1)(A) runs from the judgment entered upon resentencing— even if, as here, the defendant's habeas petition challenges the underlying conviction." Woodfolk v. Maynard, 857 F.3d 531, 542 (4th Cir. 2017). On June 11, 2015, North Carolina resentenced Gray, and he did not appeal. Thus, his conviction became final on June 25, 2015. See N.C. R. App. P. 4(a)(2); Gonzalez v. Thaler, 565 U.S. 134, 149–50 (2012). Accordingly, under section 2244(d)(1)(A), Gray had until June 25, 2016, to file his section 2254 petition.

On February 9, 2016, Gray filed in the Fourth Circuit a pro se motion under 28 U.S.C. § 2244(b) "for leave to file a second or successive § 2254 petition." In re Gray, 850 F.3d at 140. On May 1, 2016, Gray filed in the Fourth Circuit the proposed section 2254 petition that he desired to file in this court if the Fourth Circuit authorized him to do so. Gray then awaited the Fourth Circuit's decision on his request for authorization. Cf. 28 U.S.C. § 2244(b)(3)(D) ("The court of appeals shall grant or deny the authorization to file a second or successive application not later than 30 days after the filing of the motion."); 4th Cir. R. 22(d) ("The Court will enter an order granting or denying authorization within 30 days of filing of the motion, and the clerk will transmit a copy of the order to the district court.").

On February 28, 2017, the Fourth Circuit issued its decision on Gray's request for authorization to file a second section 2254 petition. See In re Gray, 850 F.3d at 139. The Fourth Circuit held that "when a habeas petition is the first to challenge a new judgment, it is not second or successive within the meaning of § 2244(b), regardless of whether it challenges the sentence or the underlying conviction." Id. at 143. Thus, the Fourth Circuit held that "Gray's motion for leave to file a second or successive § 2254 petition is denied as unnecessary" and directed "the district court to consider Gray's second-in-time § 2254 petition as the first challenge to the new judgment." Id. at 144.

On March 20, 2017, Gray filed his second section 2254 petition in this court. Respondent

7

moves to dismiss the petition as untimely because Gray missed the one-year deadline of June 25, 2016. Gray responds that equitable tolling should apply.

Initially, the court assumes without deciding that Gray's motion for authorization of February 9, 2016, did not toll the running of the one-year period in section 2244(d)(1). Compare Fierro v. Cockrell, 294 F.3d 674, 681 (5th Cir. 2002) (holding that filing a motion for authorization to file a second or successive habeas petition does not toll the running of the 1-year statute of limitations in 28 U.S.C. § 2244(d)(1)), with Orona v. United States, 826 F.3d 1196, 1198 (9th Cir. 2016) (per curiam) (holding that filing a motion for authorization to file a second or successive habeas petition tolls the running of the 1-year statute of limitations in 28 U.S.C. § 2244(d)(1)), and Easterwood v. Champion, 213 F.3d 1321, 1324 (10th Cir. 2000) (same). Thus, absent equitable tolling, Gray's second section 2254 petition is untimely.

AEDPA's one-year statute of limitations is subject to equitable tolling. Holland v. Florida, 560 U.S. 631, 645–49 (2010). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements." Menominee Indian Tribe of Wis. v. United States, 136 S. Ct. 750, 756 (2016) (quotation omitted); see Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). Equitable tolling requires a litigant to establish : "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Menominee Indian Tribe of Wis., 136 S. Ct. at 755 (quotation omitted). The "second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond its control." Id. at 756; see Credit Suisse Secs. (USA) LLC v. Simmonds, 566 U.S. 221, 227 (2012); Pace, 544 U.S. at 418; Jackson v. Kelly, 650 F.3d 477, 491–92 (4th Cir. 2011); Green v. Johnson, 515 F.3d 290, 304 (4th Cir. 2008).

Courts have applied equitable tolling in "two generally distinct kind of situations." Harris v.

8

Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000) (quotation omitted). "In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." Id. (quotation omitted). "But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Id.; see Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990). "To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation." Harris, 209 F.3d at 330. "[A]ny resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Id.; Menominee Indian Tribe of Wis., 136 S. Ct. at 755–756; Pace, 544 U.S. at 418–19; Irwin, 498 U.S. at 96; Baldwin Cty. Welcome Ctr. v. Brown, 466 U.S. 147, 151–52 (1984); Rouse v. Lee, 339 F.3d 238, 246–57 (4th Cir. 2003) (en banc).

The record demonstrates that Gray has been pursuing his rights diligently for many years. Moreover, on these very unique facts, extraordinary circumstances stood in Gray's way and were beyond his control. Specifically, when Gray requested authorization from the Fourth Circuit to file a second section 2254 petition, Gray was acting consistently with the Fourth Circuit's direction in Gray, 608 F. App'x at 173, the statutory language in 28 U.S.C. § 2244(b)(3)(A), and Fourth Circuit Rule 22(d). Moreover, at that time, the Fourth Circuit had yet to construe Magwood v. Patterson, 561 U.S. 320 (2010), and it was unclear in the Fourth Circuit whether Gray needed authorization from the Fourth Circuit to file a second section 2254 petition to challenge the new judgment. See In re Gray, 850 F.3d at 141–44. Furthermore, had the Fourth Circuit acted on Gray's request for authorization

9

within 30 days as required under 28 U.S.C. § 2244(b)(3)(D) and Fourth Circuit Rule 22(d), Gray would have known by June 1, 2016, that he did not need authorization to file his second section 2254 petition and would have met the deadline of June 25, 2016. Thus, on these very unique facts, which are unlikely to recur, the court applies equitable tolling and finds Gray's petition to be timely. Whether Gray's petition will survive a motion for summary judgment is an issue for another day.

B.

Gray objects that Judge Numbers failed to rule on his motion to appoint counsel. See [D.E. 27] 3. Gray, however, did not file a motion to appoint counsel. Rather, Gray attached an exhibit to his second-in-time 2254 petition concerning unrelated parole and custody classification issues. See Pet'r Ex. [D.E. 4-1]. In that exhibit, Gray asked "that counsel be appointed if the court deems it necessary." Id. at 18. Gray did not support this request with any argument. See id.

In light of the record, Judge Numbers did not err in declining to rule on Gray's request for counsel concerning unrelated parole and custody classification issues, and the court overrules the objection. Alternatively, and in any event, no right to counsel exists in civil cases absent "exceptional circumstances." Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Court, 490 U.S. 296 (1989); see Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstance "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163. The claims in this case and Gray's abilities do not present exceptional circumstances. Accordingly, the court denies Gray's request for appointed counsel.

Gray also objects to Judge Numbers's determination that his parole and custody classification claims are unrelated to his second section 2254 petition [D.E. 27] 3. This court disagrees and holds that Gray must pursue his claims concerning parole and custody classification under 42 U.S.C. § 1983.

10

See, e.g., Wilkinson v. Dotson, 544 U.S. 74, 82 (2005); Nelson v. Campbell, 541 U.S. 637, 643 (2004); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976); Preiser v. Rodriguez, 411 U.S. 475, 494, 498–99 (1973). Thus, the court overrules the objection and dismisses without prejudice Gray's parole and custody classification claims. The clerk shall provide Gray with the forms for initiating an action under 42 U.S.C. § 1983.

Finally, Gray objects that the Judge Numbers granted respondent's requests to exceed the page limits. See [D.E. 27] 5. Given the complexity of the case, Judge Numbers did not err in granting the requests. Accordingly, the court overrules this objection.

II.

In sum, the court OVERRULES the objections [D.E. 27, 28] and DENIES respondent's motion to dismiss [D.E. 13]. Gray's claims challenging his parole determinations and custody classification is DISMISSED without prejudice. The clerk shall provide Gray with the form for initiating an action under 42 U.S.C. § 1983. Judge Numbers should enter a scheduling order, including a deadline for the parties to file dispositive motions concerning the merits of Gray's second section 2254 petition.

SO ORDERED. This 21 day of March 2018.

JAMES C. DEVER III
Chief United States District Judge